IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2012 Session

## JEANETTE REA JACKSON v. BRADLEY SMITH

**Appeal by Permission from the Court of Appeals
Chancery Court for McNairy County
No. 8710     William C. Cole, Chancellor**

---

**No. W2011-00194-SC-R11-CV - Filed November 16, 2012**

---

This appeal involves the efforts of a grandmother to obtain court-ordered visitation with her granddaughter in accordance with Tenn. Code Ann. § 36-6-306 (2010). Shortly after the death of her daughter, the grandmother filed a petition in the Chancery Court for McNairy County seeking visitation with her granddaughter. Following a two-day hearing, the trial court denied the grandmother's request for visitation because she had failed to prove the statutory grounds necessary to permit a court to order grandparental visitation over a parent's objection. The grandmother did not appeal this decision. After the decision became final, the Tennessee General Assembly amended the burden of persuasion in the grandparental visitation statute by creating a new rebuttable presumption that a child whose parent dies will be substantially harmed by the cessation of an existing relationship with a grandparent who is the parent of the deceased parent. Without alleging new facts and relying solely on the change in the statutory burden of persuasion, the grandmother filed a second petition in the trial court seeking visitation with her granddaughter. The trial court granted the child's father's motion to dismiss on the ground of res judicata. The Court of Appeals affirmed the trial court's order. *Jackson v. Smith*, No. W2011-00194-COA-R3-CV, 2011 WL 3963589 (Tenn. Ct. App. Sept. 9, 2011). We granted the grandmother's application for permission to appeal to determine whether the intervening change in the burden of persuasion in the grandparental visitation statute provided an exception to the operation of the res judicata doctrine. We have determined that it does not and that, without some material change in the facts, the doctrine of res judicata bars relitigation of the grandmother's petition for grandparental visitation.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.

Andrea D. Sipes, Matthew E. Wright, and Bradley J. Owens, Jackson, Tennessee, for the appellant, Jeanette Rea Jackson.

Curtis F. Hopper, Savannah, Tennessee, for the appellee, Bradley Smith.

**OPINION**

**I.**

Bradley Smith and Stephanie Smith were married and made their home in Corinth, Mississippi. In November 2006, Ms. Smith gave birth to a daughter. The child lived with both parents until August 2008. From August 2008 to February 2009, the child was in the custody of Ms. Smith in Burnsville, Mississippi. In February 2009, the child went to live with Mr. Smith in McNairy County, Tennessee. Two months later, on April 8, 2009, Ms. Smith died unexpectedly. Following her daughter's death, Jeanette Jackson, a resident of Alabama, requested visitation with her granddaughter on several occasions. Eventually, Mr. Smith declined to permit Ms. Jackson to visit her granddaughter.

On April 27, 2009, Ms. Jackson filed a petition in the Chancery Court for McNairy County seeking visitation with her granddaughter in accordance with Tennessee's grandparental visitation statute ("2009 petition").[1] At that time, the statute required grandparents seeking visitation with a grandchild, despite the child's parent's objection, to prove (1) that they had a significant existing relationship with their grandchild,[2] (2) that the child was likely to suffer severe emotional harm or other direct and substantial harm by the loss of the relationship with the grandparent,[3] and (3) that permitting grandparental visitation would be in the child's best interests.[4]

Following a two-day hearing, the trial court found that Ms. Jackson had visited her granddaughter frequently before Ms. Smith's death.[5] However, on October 2, 2009, the trial

---

[1]In 2009, the grandparental visitation statute was codified at Tenn. Code Ann. § 36-6-306 (Supp. 2007).

[2]Tenn. Code Ann. § 36-6-306(b)(1)(A).

[3]Tenn. Code Ann. § 36-6-306(b)(1)(A), (C).

[4]Tenn. Code Ann. § 36-6-306(c).

[5]The parties have not included any portion of the record relating to the 2009 petition in this record. However, Mr. Smith has not taken issue with Ms. Jackson's assertion that the trial court "had previously found that the Petitioner had frequent visitation with the subject child for a period of not less than one (1)
(continued...)

court entered an order finding that Ms. Jackson had failed to prove that the cessation of her relationship with her granddaughter was likely to cause the child severe emotional harm or present a danger of other direct and substantial harm to the child. Ms. Jackson did not appeal this decision, and so the trial court's October 2, 2009 order became final.

During its 2010 session, the Tennessee General Assembly amended Tenn. Code Ann. § 36-6-306 to create a new "rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent" when the child's parent is deceased and the grandparent seeking visitation is the parent of the deceased parent.[6] Ms. Jackson and her lawyer played a prominent role in the General Assembly's adoption of this amendment.

The new rebuttable presumption in Tenn. Code Ann. § 36-6-306(b)(4) took effect on May 26, 2010. On July 9, 2010, Ms. Jackson filed a second petition for grandparental visitation in the Chancery Court for McNairy County ("2010 petition"). This petition did not allege any facts regarding the child, Mr. Smith, or Ms. Jackson that had not been alleged in Ms. Jackson's 2009 petition. However, the petition alleged that "[t]here now exists a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the subject child and the Petitioner, pursuant to T.C.A. § 36-6-306, as amended by Public Chapter 957 of the Public Acts of 2010."

On August 9, 2010, Mr. Smith filed a motion to dismiss Ms. Jackson's 2010 petition on the ground that the trial court's final disposition of her 2009 petition on the merits precluded her from relitigating her grandparental visitation claim in the absence of a material change in the child's circumstances. Ms. Jackson filed a response to Mr. Smith's motion on October 14, 2010, in which she agreed that her 2009 petition had been fully litigated and that the judgment entered on October 2, 2009, was a final judgment. However, she insisted that Tenn. Code Ann. § 36-6-306(b)(4) amounted to a substantial change in the law and, therefore, that the doctrine of res judicata did not prohibit her from relitigating her request for grandparental visitation based on facts that had already been fully adjudicated by the court just one year earlier.

Following a hearing, the trial court entered an order on November 8, 2010, granting Mr. Smith's motion to dismiss. The trial court stated that the evidence Ms. Jackson presented to support her 2009 petition had failed to establish a danger of substantial harm to her granddaughter if visitation were discontinued. While the trial court noted the 2010

_____

[5](...continued)
year."

[6]Act of May 6, 2010, ch. 957, § 1, 2010 Tenn. Pub. Acts 482, 482 (codified at Tenn. Code Ann. § 36-6-306(b)(4) (2010)).

adoption of Tenn. Code Ann. § 36-6-306(b)(4), it concluded that res judicata barred the 2010 petition because Ms. Jackson did not dispute "the validity and finality" of its October 2, 2009 judgment.

Ms. Jackson appealed the dismissal of her 2010 petition to the Court of Appeals. The appellate court's September 9, 2011 opinion did not definitively decide whether the 2010 enactment of Tenn. Code Ann. § 36-6-306(b)(4) required the courts to make an exception to the customary operation of the doctrine of res judicata. After considering the "facts of this case" and the "nature of the statutory enactment," the court decided that "the doctrine of *res judicata* may be applied in this case." *Jackson v. Smith*, No. W2011-00194-COA-R3-CV, 2011 WL 3963589, at *8 (Tenn. Ct. App. Sept. 9, 2011). However, the court declined to review the trial court's decision that the doctrine of res judicata should be applied in this case because Ms. Jackson's failure "to meet her burden to provide an adequate record in this case" prevented the court from conducting "a meaningful review of the question of whether the First Order [the order entered on October 2, 2009] was final from a technical standpoint." *Jackson v. Smith*, 2011 WL 3963589, at *11.

## II.

As a threshold matter, we turn to the question of whether the record is sufficient to enable the appellate courts to determine whether the doctrine of res judicata bars Ms. Jackson's 2010 petition seeking visitation with her granddaughter. The Court of Appeals determined that the record is fatally deficient because it does not contain a copy of the trial court's October 2, 2009 order. The appellate court reasoned that it could not determine whether this order satisfied the "technical requirements for finality of orders" without a copy of the order in the record. We share the Court of Appeals' concern regarding the parties' nonchalant approach to preserving an appellate record that contains a "fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(a). However, we have determined that Ms. Jackson's concessions regarding the proceedings relating to her 2009 petition and the October 2, 2009 order cure these deficiencies and provide the appellate courts with a sufficient foundation for deciding whether the enactment of Tenn. Code Ann. § 36-6-306(b)(4) saves Ms. Jackson's 2010 petition from the customary operation of the doctrine of res judicata.

## A.

The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989)). It is a "rule of rest," *Moulton v. Ford Motor*

-4-

*Co.*, 533 S.W.2d 295, 296 (Tenn. 1976), and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits. *In re Estate of Boote*, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tennessee Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002).

The party asserting a defense predicated on res judicata or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *see also Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A trial court's decision that a claim is barred by the doctrine of res judicata or claim preclusion involves a question of law which will be reviewed de novo on appeal without a presumption of correctness. *In re Estate of Boote*, 198 S.W.3d at 719.

Res judicata is one of the affirmative defenses that must be included in the defendant's answer. Tenn. R. Civ. P. 8.03. However, in appropriate circumstances, it may be raised in a Tenn. R. Civ. P. 12.02(6) motion. For a Tenn. R. Civ. P. 12.02(6) motion to be used as a vehicle to assert an affirmative defense, the applicability of the defense must "clearly and unequivocally appear[ ] on the face of the complaint." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 404 (Tenn. 2002) (quoting *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1972)).[7] In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief. *See Ragsdale v. Hill*, 37 Tenn. App. 671, 681, 269 S.W.2d 911, 916 (1954) (holding that a demurrer asserting res judicata was improper when the petition being challenged did not mention the prior decree); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 713-14 (3d ed. 2004).[8]

---

[7]The contrary holding in *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977) was not expressly overruled in *Anthony v. Tidwell* or *Givens v. Mullikin ex rel. Estate of McElwaney*. We expressly overrule it now.

[8]Many of our procedural rules have been derived from federal procedural rules. Accordingly, we have often considered the federal courts' interpretations of the federal rules when we have been called upon to construe our own rules. *See Thomas v. Oldfield*, 279 S.W.3d 259, 262 n.3 (Tenn. 2009); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007). While we are not bound by the federal courts' interpretations of the federal rules, *see Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 524 (Tenn. 2011); *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011), we may seek helpful guidance from these interpretations when we are construing and applying our own rules.

**B.**

Ms. Jackson's 2010 petition–which is included in the appellate record–contains no allegations that would give rise to a res judicata defense. It does not mention or even allude to Ms. Jackson's 2009 petition.[9] While Mr. Smith's motion to dismiss includes the details of the litigation relating to Ms. Jackson's 2009 petition, Mr. Smith did not file copies of the October 2, 2009 order or any other portions of the record of the 2009 proceedings along with his motion.[10]

Without more, the trial court could have denied Mr. Smith's motion to dismiss, had Ms. Jackson requested the court to do so. However, prior to the hearing on the motion, Ms. Jackson filed a response that cured all the procedural shortcomings in Mr. Smith's motion. In her response, Ms. Jackson agreed (1) that her 2010 petition was the second petition for grandparental visitation she had filed; (2) that the trial court had conducted a hearing regarding her former petition; (3) that the trial court had issued an opinion and final judgment with regard to the former petition finding no evidence demonstrating that the loss of her granddaughter's relationship with Ms. Jackson would cause severe emotional harm or present the danger of other direct and substantial harm to the child; and (4) that all findings of facts made by the trial court in its opinion and judgment were res judicata.

Based on the concessions in Ms. Jackson's response to the motion to dismiss and the statements of her lawyer during the hearing on the motion to dismiss, the trial court found that Ms. Jackson "does not dispute the validity and finality of this Court's previous order." Ms. Jackson has not taken issue with this finding either in the Court of Appeals or in this Court.

We respectfully disagree with the Court of Appeals' conclusion that the record is insufficient to enable the appellate courts to decide whether the doctrine of res judicata bars Ms. Jackson's 2010 petition seeking grandparental visitation. In light of Ms. Jackson's

---

[9]However, Ms. Jackson's 2010 petition discloses a dependent and neglect action that Ms. Jackson filed in the McNairy County Juvenile Court against her daughter and son-in-law.

[10]A party asserting a res judicata defense may generally prove its defense with a copy of the judgment in the former proceeding. However, if the judgment leaves any of the elements of the defense uncertain, the party asserting the defense must provide additional evidence. *Garrett v. Corry Foam Prods., Inc.*, 596 S.W.2d 808, 809 (Tenn. 1980). In other circumstances, the Court of Appeals has stated that parties asserting a res judicata defense "must generally put in evidence the record or a copy of the record of the former case." *Gregory v. Gregory*, 803 S.W.2d 242, 244 (Tenn. Ct. App. 1990); *see also American Nat'l Bank v. Bradford*, 28 Tenn. App. 239, 250, 188 S.W.2d 971, 976 (1945). While parties asserting a res judicata defense may introduce a copy of the entire record of the prior proceedings to support their motion to dismiss, they are required to introduce only those portions of the record that are necessary to establish the application of the doctrine of res judicata.

concessions, the record contains ample basis for concluding: (1) that the October 2, 2009 order was rendered by a court of competent jurisdiction; (2) that the 2009 petition and the 2010 petition involve the same parties; (3) that the 2009 petition and the 2010 petition assert the same claim; (4) that the October 2, 2009 judgment was on the merits; (5) that the October 2, 2009 order was a final judgment; and (6) that the October 2, 2009 order was properly entered.

## III.

Ms. Jackson's principal argument on this appeal is that the Court of Appeals erred by failing to hold that the 2010 enactment of Tenn. Code Ann. § 36-6-306(b)(4) undermined the preclusive effect of the trial court's October 2, 2009 judgment. She insists that, based solely on the change in the law, she may file a second petition seeking grandparental visitation with her granddaughter, even though the material facts have not changed. We respectfully disagree for two reasons.

First, the general rule, recognized throughout this nation, is that a change in the law occurring after a final judgment ordinarily does not create an exception to the application of the doctrine of res judicata or claim preclusion. *Moulton v. Ford Motor Co.*, 533 S.W.2d at 297 (applying res judicata despite an intervening change in decisional law); *see also Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984); 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4415, at 369 (2d ed. 2002) ("18 *Federal Practice and Procedure*"). Accordingly, the enactment of a new statute after the previous litigation has been finally concluded will ordinarily not provide a basis for relitigating the same dispute. *See* 18 James Wm. Moore et al., *Moore's Federal Practice* §§ 131.21[2], 131.22[3] (3d ed. 2009) ("18 *Moore's Federal Practice*").

The courts have declined to recognize a broad "general fairness" exception to the doctrine of res judicata when there is a subsequent change in the law. *See Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380 (Fed. Cir. 2008); 18 *Federal Practice and Procedure* § 4415, at 379. However, on "rare occasions,"[11] the courts have recognized exceptions to the preclusive effect of a prior judgment following a change in the law. For example, the courts have permitted a second action based on a new statute "when a new statute provides an independent basis for relief which did not exist at the time of the prior action." 18 *Moore's Federal Practice* § 131.22[3]; *see also State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000) (permitting a second lawsuit after the first lawsuit had been dismissed for lack of standing). Similarly, the courts have relaxed the res judicata doctrine in circumstances in which a party has been deprived of a fair opportunity to litigate

---

[11]*See* 18 *Moore's Federal Practice* § 131.22[3].

its claim.  *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982); 18 *Federal Practice and Procedure* § 4415, at 351, 365-66.

In addition, the courts have declined to apply the res judicata doctrine when a dispute involved matters of special sensitivity.  Matters of special sensitivity most often arise in cases of developing constitutional principles and issues of broad public importance.  *See Parnell v. Rapides Parish Sch. Bd.*, 563 F.2d 180, 185 (5th Cir. 1977) (declining to apply res judicata to a reapportionment suit lest the right to vote be applied differently in different locations); *Christian v. Jemison*, 303 F.2d 52, 54-55 (5th Cir. 1962) (declining to apply res judicata to suit involving segregation issue in light of the intervening change effected by *Brown v. Board of Educ.*, 347 U.S. 483 (1954)).  Also included are cases of continuing conduct, which itself strains the typical application of res judicata, involving substantial public policy concerns, such as a suit to prevent continued environmental pollution.  *See* 18 *Moore's Federal Practice* § 131.22[3]; 18 *Federal Practice and Procedure* § 4415, at 372.

None of these exceptions are applicable in this case.  Tenn. Code Ann. § 36-6-306(b)(4) did not provide Ms. Jackson with new grounds for seeking visitation with her granddaughter.  Ms. Jackson has never claimed that she was deprived of a full and fair opportunity to present and litigate her request for grandparental visitation in 2009.  In addition, while Ms. Jackson's desire to exercise visitation with her granddaughter is of great importance to her, her claim does not involve the development of constitutional principles with regard to matters of broad public importance.

The second basis for declining to interpret Tenn. Code Ann. § 36-6-306(b)(4) to permit Ms. Jackson to relitigate her request for grandparental visitation is the doctrine of separation of powers reflected in Article II, Sections 1 and 2 of the Constitution of Tennessee.  The power to fully and finally adjudicate cases and controversies is constitutionally assigned to the judiciary of this state, and the Tennessee General Assembly may not interfere with the adjudicative functions of the courts.  *Lynch v. City of Jellico*, 205 S.W.3d 384, 393 (Tenn. 2006) (quoting *Underwood v. State*, 529 S.W.2d 45, 47 (Tenn. 1975)).

The courts must decide the cases brought before them based on the law existing at the time of their decisions and on the facts presented to them.  *Perkins v. Scales*, 2 Tenn. Cas. (Shannon)  235, 236-37 (1877); *Tate's Ex'rs v. Bell*, 12 Tenn. (4 Yer.) 202, 206-07 (1833).  Litigants have a vested interest in a court's judgment once it becomes final.  Accordingly, acts of the Tennessee General Assembly are construed to operate prospectively in order to avoid being found to be retrospective and therefore proscribed by Article I, Section 20 of the Constitution of Tennessee.

A final judgment is the judiciary's last word in a particular case. Thus, as the United States Supreme Court has held, "[h]aving achieved finality, . . . a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995). We have an obligation to interpret statutes in a way that preserves their constitutionality. *Jordan v. Knox Cnty.*, 213 S.W.3d 751, 780-81 (Tenn. 2007). Accordingly, we decline to interpret Tenn. Code Ann. § 36-6-306(b)(4) in a way that places it on a collision course with Article I, Section 20.

Ms. Jackson's 2009 petition for visitation with her granddaughter was fully and fairly litigated in accordance with existing law. Ms. Jackson was given every opportunity to introduce the evidence required at that time to obtain visitation with her granddaughter. Following two days of hearings, the trial court determined that Ms. Jackson had failed to prove that her granddaughter would suffer severe emotional harm or other direct and substantial harm if she was no longer able to visit with Ms. Jackson. This judgment became final when Ms. Jackson elected not to appeal it. Accordingly, we decline to interpret Tenn. Code Ann. § 36-6-306(b)(4) to permit Ms. Jackson, in the absence of new facts occurring after the entry of the October 2, 2009 judgment,[12] to seek visitation with her granddaughter pursuant to Tenn. Code Ann. § 36-6-306.

## IV.

We affirm the trial court's dismissal of Ms. Jackson's 2010 petition on the ground of res judicata. We remand the case to the trial court for whatever further proceedings consistent with this opinion may be required, and we tax the costs of this appeal to Jeanette Rea Jackson and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[12]The doctrine of res judicata does not prevent courts from reconsidering a claim when "the facts have changed or new facts have occurred" that have altered the parties' legal rights and obligations. *Creech v. Addington*, 281 S.W.3d at 381 (quoting *Banks v. Banks*, 18 Tenn. App. 347, 350, 77 S.W.2d 74, 76 (1934)); *White v. White*, 876 S.W.2d 837, 839-40 (Tenn. 1994). These new facts must have occurred after the first adjudication; they do not include newly discovered evidence of facts that existed prior to the adjudication. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 394 (Tenn. Ct. App. 2009). A change in the law is not, as Ms. Jackson argues, a change in the facts.