IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2017 Session

## IN RE ESTATE OF BILL MORRIS

**Appeal from the Chancery Court for Franklin County**
**No. 19721      Jeffrey F. Stewart, Judge**

_____

### No. M2016-02557-COA-R3-CV

_____

This is an appeal from the trial court's denial of Appellants' motion pursuant to Tennessee Rule of Civil Procedure 60.02.  In *In re Estate of Morris*, No. M2014-00874-COA-R3-CV, 2015 WL 557970, (Tenn. Ct. App. Feb. 9, 2015), *perm. app. denied* (Tenn. June 15, 2015) (*Morris I*), this Court held that Decedent's will was invalid for failing to comply with the statutory formalities for executing a will. Following the Supreme Court's denial of certiorari, the parties entered into an agreed order declaring the will invalid and agreeing to administer the Decedent's estate as an intestate estate.  After our decision in *Morris I* and entry of the agreed order, the legislature amended Tennessee Code Annotated section 32-1-104 to validate wills executed in the manner of the will at issue here.  Relying on this amendment, Proponents of the will filed a Rule 60.02 motion asserting that "it is no longer equitable that the [agreed final judgment] should have prospective effect and relief from the operation is justified."  The trial court denied Rule 60.02 relief and proponents of the will appeal.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Donald Capparella and Tyler Chance Yarbro, Nashville, Tennessee, for the appellants, Gary Lee Morris and Pamela Jean Morris.

Eddy R. Smith and Katie Tolliver Jones, Knoxville, Tennessee, for the appellees, Estate of Bill Morris, Deceased, Bill Morris, Jr., and Cheryl Morris.

## OPINION

## I.     Background

This is the second appeal of this case.  In ***In re Estate of Morris***, No. M2014-00874-COA-R3-CV, 2015 WL 557970, at *4 (Tenn. Ct. App. Feb. 9, 2015), *perm. app. denied* (Tenn. June 15, 2015) (***Morris I***), we held that the signatures of the witnesses on an affidavit, but not on the will, did not satisfy the statutory formalities for the valid execution of a will.  ***Morris I*** at *4.  Consequently, we concluded that the Decedent died intestate.  *Id.*  After the Tennessee Supreme Court denied certiorari, the parties entered an agreed final judgment on October 13, 2015.  The agreed final judgment states that the "putative will of Bill Morris is not a will and Bill Morris died intestate."  The judgment goes on to state that "[u]pon entry of this final judgment, the probate of the estate of Bill Morris shall commence immediately. . ." and defines the terms of the estate's administration.

After ***Morris I*** was decided, in April 2016, the legislature added subsection (b) to Tennessee Code Annotated section 32-1-104.  This statutory amendment allows the integration of the attestation affidavit to the will itself such that wills not otherwise validly executed under the prior law may be entered into probate.  The new section of the statute reads as follows:

> (b)(1) For wills executed prior to July 1, 2016, to the extent necessary for the will to be validly executed, witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the will, provided that:
> (A) The signatures are made at the same time as the testator signs the will and are made in accordance with subsection (a); and
> (B) The affidavit contains language meeting all the requirements of subsection (a).
> (2) If the witnesses signed the affidavit on the same day that the testator signed the will, it shall be presumed that the witnesses and the testator signed at the same time, unless rebutted by clear and convincing evidence. If, pursuant to this subsection (b), witness signatures on the affidavit are treated as signatures on the will, the affidavit shall not also serve as a self-proving affidavit under § 32-2-110.  Nothing in this subsection (b) shall affect, eliminate, or relax the requirement in subsection (a) that the testator sign the will.

Tenn. Code Ann. § 32-1-104(b).

On May 13, 2016, proponents of the will, Pamela Morris and Gary Morris (together "Appellants"), filed a motion pursuant to Tennessee Rule of Civil Procedure 60.02 (4) and (5) in the trial court.  Appellants asserted that "it is no longer equitable that

the October 13, 2015 order should have prospective effect and relief from the operation of the judgment is justified." On August 22, 2016, Bill Morris, Jr. and Cheryl Morris (together "Appellees"), filed a response to Appellants' Rule 60 motion and an accompanying memorandum. Appellees argued that a change in the law is not generally a basis for relief under Rule 60 and that an intervening change in the law does not exempt parties from the doctrines of *res judicata*. Appellees also argued that the separation of powers doctrine prevents the legislature from changing the law to alter the result of a final judgment. After a hearing, the trial court entered an order denying Appellants' Rule 60.02 motion on October 13, 2016. Appellants appeal.

## II. Issues

Appellants raise three issues for review as stated in their brief:

1. Whether Tenn. R. Civ. P. 60.02(4) or (5) applies to grant relief from the final judgment declaring that Decedent died intestate, when subsequent legislation make it inequitable and unjust to not allow Decedent's will to be probated?

2. Whether the doctrines of res judicata or separation of powers apply to bar the application of Rule 60.02(4) or (5), when such doctrines have no application to relief sought under Tenn. R. Civ. P. 60.02.

3. Whether Appellees have waived any claim that Rule 60.02 relief sought in this case is unconstitutional by failing to give notice to the Tennessee Attorney General as required under Tenn. R. Civ. P. 24.04?

Appellees contend that Appellants' appeal is frivolous and request an award of attorneys' fees and costs on appeal.

## III. Standard of Review

Generally, we review the trial court's decision to grant a Rule 60.02 motion under the abuse of discretion standard. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000); *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). In *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001), our Supreme Court discussed the abuse of discretion standard, stating:

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge,* 42 S.W.3d at 85. Appellate courts ordinarily permit discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Silliman v. City of Memphis*, 449 S.W.3d 440, 447-48 (Tenn. Ct. App. 2014)(citations omitted).

Although we review the trial court's overall decision to grant Rule 60.02 relief under the abuse of discretion standard, this case involves the proper interpretation of a statute, which is a question of law. Consequently, we review the trial court's interpretation of Tennessee Code Annotated Section 32-1-104(b) *de novo,* with no presumption of correctness. *See Pickard v. Tennessee Water Quality Control Bd.,* 424 S.W.3d 511, 518 (Tenn. 2013) (citing *Myers v. AMISUB (SFH), Inc.,* 382 S.W.3d 300, 308 (Tenn. 2012)); s*ee also Silliman*, 449 S.W.3d at 455.

### IV. Analysis

### A.    Tennessee Rule of Civil Procedure 60.02

As is relevant to this appeal, a trial court may relieve a party from a final judgment if "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application" or "any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02(4) and (5). The trial court's order denying Appellants' Rule 60 motion states, in pertinent part:

2.    No parties appealed the Agreed Final Judgment or filed a petition to rehear, reconsider, set aside, alter or amend the Agreed Final Judgment.

***

5. Movants' sole basis for their motion was the subsequent legislation. Movants allege no new or additional facts.

6. The parties' previous litigation already determined their rights under the applicable law and settled their claims in this matter.

Therefore, the Court finds the movants have failed to meet their burden under Rule 60 to set aside the final agreed order in this case . . . .

The burden of proof under Rule 60.02 is on the party seeking relief, and "the burden borne by the movant is heavy." *Johnson v. Johnson*, 37 S.W. 3d 892, 895 n. 2 (Tenn. 2001). The Tennessee Supreme Court has described the high threshold for relief pursuant to Rule 60.02:

> [W]e have characterized relief under Rule 60.02 as an "exceptional remedy," *Nails v. Aetna Ins. Co.,* 834 S.W.2d 289, 294 (Tenn. 1992), "designed to strike a proper balance between the competing principles of finality and justice," *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 provides an "escape valve," *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn. 1990), that "should not be easily opened." *Toney v. Mueller Co.,* 810 S.W.2d 145, 146 (Tenn. 1991). We have reversed relief granted under Rule 60.02 where the judgment was "not oppressive or onerous." *Killion v. Tenn. Dep't of Human Servs.,* 845 S.W.2d 212, 214 (Tenn. 1992). "[R]elief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 336 (Tenn. 2010).

*Furlough v. Spherion Atlantic Workforce, L.L.C.,* 397 S.W.3d 114, 127-28 (Tenn. 2013).

Based on the addition of subsection (b) to Tennessee Code Annotated section 32-1-104, Appellants argue that "it is no longer equitable that the [Agreed Final Judgment] should have prospective effect." In support of this argument, Appellants cite **White v. Armstrong**, wherein this Court adopted the federal standard for determining whether a judgment has prospective application. The *White* case is one of several Tennessee cases in which men, who voluntarily acknowledged paternity of a child, subsequently filed Rule 60.02 motions alleging that they were not the biological father of the child for which they acknowledged paternity. The outcome in each of these cases turned on the particular facts presented. There is no bright-line rule in which every father who has voluntarily acknowledged paternity and who is later proved not to be the child's biological father may be relieved from the parental obligation he previously undertook.

- 5 -

***Richards v. Read****,* No. 01A01-9708-PB00450, 1999 WL 820823 at \*12 (Tenn. Ct. App. July 27, 1999) (*no perm. app. filed* ) (Cottrell, J, concurring). Rather, the determination of whether Rule 60.02 relief is appropriate depends on a weighing of the equities of the case. ***State Dep't of Human Servs. ex rel. Ellis v. Humes***, No. W2004-00602-COA-R3JV, 2005 WL 562753, at \*3 (Tenn. Ct. App. Mar. 10, 2005). "[T]he gravamen of Rule 60.02(4) relief in these types of cases lies in equity." ***Welch v. Welch***, 195 S.W.3d 72, 75-76 (Tenn. Ct. App. 2005) (quoting ***Ellis***, 2005 WL 562753 \*4). As we cautioned in ***White,*** Rule 60 relief "should not be granted without analyzing the burdens that granting relief or failing to grant relief will place on all who have an interest in the proceeding." ***White*** 1999 WL 33085, at \*5. Consequently, "[a] change in the law will not always provide the truly extraordinary circumstances necessary to reopen a case." ***Ritter v. Smith***, 811 F.2d 1398, 1401 (11th Cir. 1987).

The instant case is readily distinguishable from the line of child support cases on which Appellants rely. In a child support case, the issuing court retains jurisdiction over the order to modify it in the event of a change in circumstances or to impose sanctions for failure to pay. ***White*** 1999 WL 33085, at \*4. Therefore, the trial court has the power to modify or vacate its child support orders if it determines that it is no longer equitable that the orders have prospective effect. Here, unlike the ***White*** line of cases, the final judgment is not subject to ongoing modification pursuant to statute, and the trial court did not retain the authority to modify the final order finding that Bill Morris died intestate.

Nonetheless, Appellants argue that the agreed final order has prospective effect because the administration of the estate has not been completed. Appellants cite ***Twelve John Does v. District of Columbia***, 841 F.2d 1133, 1139 (7th Cir. 1988) to support their position that Rule 60 relief is warranted when the decrees "involve the supervision of changing conduct or conditions." ***Id***. However, the question at issue in ***Twelve John Does*** was whether an order of dismissal had prospective application. In that case, appellees argued that any order that precludes relitigation of a claim has "prospective application" for that reason alone. In rejecting this argument, the 7th Circuit Court of Appeals concluded that, under appellees' reasoning, "any final order or judgment on the merits could potentially be reopened under Rule 60(b), which is plainly inconsistent with the requirement of prospective application . . . ." ***Id.*** at 1140. In the present case, no issues remain unresolved as to the execution of the will. This Court concluded and the the parties later agreed that Bill Morris's will was not properly executed and that he died intestate. The intestate administration by the probate court that follows is separate and apart from the will contest. Pursuant to the final agreed order, Appellants are responsible for filing the inventory of assets and accounting of income and expenses, as well as documenting any conveyances or transfers regarding Decedent's estate. Appellant's unilateral inaction in delaying the required inventory and accounting does not support the argument that the will contest is modifiable because the estate remains open. Furthermore, "to allow a party to escape a consent judgment based on *its own voluntary actions* strikes us as unjustified." ***Northridge Church v. Charter Twp. of Plymouth***, 647

F.3d 606, 618 (6th Cir. 2011).  Accordingly, we conclude that the Appellants are not entitled to relief under Rule 60.02(4).

Appellants also seek relief under Rule 60.02(5).  In **Holiday v. Shoney's South, Inc.**, 42 S.W. 3d 90, 94 (Tenn. Ct. App. 2000), we held that "Rule 60.02(5) affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02."  **Id**.  Appellants have not demonstrated any extraordinary circumstances, nor do they specify any facts differentiating their argument for relief under Rule 60.02(4) from their argument for relief under Rule 60.02(5).  As such, there is no basis to conclude that the trial court abused its discretion in denying Appellants' motion under Rule 60.02(5).

## B.      Res Judicata and Separation of Powers

Appellants argue that the doctrine of *res judicata* is not applicable to Rule 60.02 proceedings.  Appellees, on the other hand, contend that an intervening change in the law does not exempt parties from the doctrine of *res judicata*.  The trial court determined that the "doctrines of *res judicata* and the constitutional separation of power argument prevail in this case."  The Tennessee Supreme Court has explained the doctrine of *res judicata* as follows:

> The policy rationale in support of *res judicata* is not based upon any presumption that the final judgment was right or just.  Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation.  Akin to statutes of limitations, the doctrine of *res judicata* is a "rule of rest" and "private peace."

**Moulton v. Ford Motor Co.**, 533 S.W. 2d 295, 296 (Tenn. 1976).  In **Moulton**, the appellants argued that they should benefit from a subsequent change in Tennessee case law after a final ruling in their initial case.  **Id.**  The general rule is that a change in the law occurring after a final judgment ordinarily does not create an exception to the application of the doctrine of *res judicata* or claim preclusion.  **Id.** at 297.  Accordingly, the enactment of a new statute after the previous litigation has been concluded will ordinarily not provide a basis for relitigating the same dispute.  **Jackson v. Smith**, 387 S.W.3d 486, 94 (Tenn. 2012) (internal citations omitted).

Appellants argue that there is a universal rule that bars the application of *res judicata* to Rule 60.02 proceedings and cite **Richards v. Read**, No. 01A01-9708-PB-00450, 1999 WL 820823, at *11 (Tenn. Ct. App. July 27, 1999), and **Safe Flight Instrument Corp. v. United Control Corp.**, 576 F.2d 1340, 1344 (9th Cir. 1978) in support of their position.  However, we disagree that these cases propose a "universal rule" precluding application of the *res judicata* doctrine from Rule 60.02 proceedings.  Rather **Richards** and **Safe Flight** reiterate the general rule that the doctrine of *res*

*judicata* is not applicable to the "prospective features of a decree that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Richards*, 1999 WL 820823, at \*11 (quoting *Safe Flight*, 576 F.2d at 1344). Appellant's argument that Rule 60.02 bars the applications of *res judicata* is not persuasive here, as this case does not involve the supervision of changing conduct or conditions.

Although the will contest in *Morris I* would have a different outcome if it had been initially heard after the enactment of Tennessee Code Annotated section 32-1-104(b), courts have declined to recognize a broad "general fairness" exception to the doctrine of *res judicata* when there is a subsequent change in the law. *Jackson*, 387 S.W.3d 486, 493. On rare occasions, courts have recognized exceptions to the doctrine of *res judicata* following a change in the law. In *Jackson*, the Tennessee Supreme Court reminds us that a second action is permitted based on a new statute "when a new statute provides an independent basis for relief which did not exist at the time of the prior action." *Id*.; s*ee also* **State ex rel. Cihlar v. Crawford**, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000) (permitting a second lawsuit after the first lawsuit had been dismissed for lack of standing). The courts have also relaxed the *res judicata* doctrine when a party has been deprived of a fair opportunity to litigate its claim. *Id.;* s*ee also* **Kremer v. Chemical Constr. Corp.**, 456 U.S. 461, 481 n. 22, 102 S. Ct. 1883, 72 L.Ed.2d 262 (1982).

Concerning the separation of powers argument, the Tennessee Constitution states that "no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. I, § 20. In **Jackson v. Smith**, the trial court initially denied grandmother's petition for visitation with her granddaughter, whose mother had died. After the decision became final, the Tennessee General Assembly amended the burden of persuasion in the grandparental visitation statute by creating a new rebuttable presumption that a child whose parent dies will be substantially harmed by the cessation of an existing relationship with a grandparent who is the parent of the deceased parent. Without alleging new facts and relying solely on the change in the statutory burden of persuasion, the grandmother filed a second petition in the trial court seeking visitation with her granddaughter. *Jackson*, 387 S.W.3d 486, 489 (Tenn. 2012). The Tennessee Supreme Court concluded that the intervening change in the grandparents' visitation statute, without a material change in the facts, does not provide an exception to the operation of *res judicata*. *Id*. In *Jackson*, Justice Koch explained the separation of powers in regard to the judiciary as follows:

> The power to fully and finally adjudicate cases and controversies is constitutionally assigned to the judiciary of this state, and the Tennessee General Assembly may not interfere with the adjudicative functions of the courts. **Lynch v. City of Jellico**, 205 S.W.3d 384, 393 (Tenn. 2006) (quoting **Underwood v. State**, 529 S.W.2d 45, 47 (Tenn.1975)).

> The courts must decide the cases brought before them based on the law

existing at the time of their decisions and on the facts presented to them. *Perkins v. Scales,* 2 Tenn. Cas. (Shannon) 235, 236-37 (1877); *Tate's Ex'rs. v. Bell,* 12 Tenn. (4 Yer.) 202, 206-07 (1833). Litigants have a vested interest in a court's judgment once it becomes final. Accordingly, acts of the Tennessee General Assembly are construed to operate prospectively in order to avoid being found to be retrospective and therefore proscribed by Article I, Section 20 of the Constitution of Tennessee.

A final judgment is the judiciary's last word in a particular case. Thus, as the United States Supreme Court has held, "[h]aving achieved finality, ... a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 227, 115 S. Ct. 1447, 131 L.Ed.2d 328 (1995). We have an obligation to interpret statutes in a way that preserves their constitutionality. *Jordan v. Knox Cnty.,* 213 S.W.3d 751, 780-81 (Tenn. 2007). Accordingly, we decline to interpret Tenn. Code Ann. § 36-6-306(b)(4) in a way that places it on a collision course with Article I, Section 20.

*Jackson*, 387 S.W.3d 486, 494-95 (Tenn. 2012)

The 2013 will contest in this case was fully and fairly litigated in accordance with the law as it existed at that time. Following a full evidentiary hearing, the trial court determined that Mr. Morris's will was validly executed. On appeal, this Court concluded that the will was not properly executed due to the lack of signatures on the will pursuant to the requirements of Tennessee Code Annotated section 32-1-104 existing at the time Mr. Morris's will was probated. The Tennessee Supreme Court denied certiorari by order entered June 15, 2015, and the parties entered an agreed final judgment conceding the will contest on October 13, 2015. Under these facts, we decline to interpret Tennessee Code Annotated section 32-1-104(b) to permit Appellants to relitigate the will contest on the basis that the applicable law was amended after the foregoing procedure occurred.

## C. Constitutional Challenge

*In re Estate of Veronica Stewart*, No. M2016-02355-COA-R3-CV discusses the constitutionality of Tennessee Code Annotated section 32-1-104(b) at length. The facts of the will contest in *Stewart* are substantially similar to those at issue in this case. The witnesses to the decedent's will in *Stewart* signed the attestation affidavit but failed to affix their signatures to the will itself. Decedent's father who was an heir-at-law but not

a beneficiary under the will argued that the retroactive application of the amended statute was unconstitutional because it interfered with his vested rights as an heir-at-law. *Id.* Ultimately, this Court held that the statute as amended did not impair Mr. Stewart's vested rights and may therefore be applied retroactively without violating Article I, §20 of the Tennessee Constitution. *Id.* Here, Appellants allege that Appellees have waived any claim that Rule 60.02 relief sought in this case is unconstitutional by failing to give notice to the Tennessee Attorney General as required under Tenn. R. Civ. P. 24.04. Rule 24.04 of the Tennessee Rules of Civil Procedure states that "when the validity of a statute …is drawn in question in any action to which the State or an officer or agency is not a party, the court shall require that notice be given to the Attorney General, specifying the pertinent statute, rule or regulation." However, Appellees are not questioning the validity of Tennessee Code Annotated section 32-1-104(b) or its retroactive application to certain wills; rather, Appellees argue that the retroactive application of the statute, as argued by Appellants, is constitutionally impermissible here because the will contest was concluded by final judgment before the statute's enactment. Importantly, the will contest in *Stewart* was heard after enactment of the 2016 amendment to Tennessee Code Annotated section 32-1-104(b). Accordingly, Appellants' waiver argument fails.

### D. Attorneys' Fees

Appellees request an award of attorneys' fees and costs on appeal. Tennessee Code Annotated section 27-1-122 states that:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." *Moran v. Wilensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)(citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). However, the statute must be interpreted and applied strictly so as not to discourage legitimate appeals. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). From our review of the entire record, we cannot conclude that this appeal was frivolous or taken solely for delay. Accordingly, we deny Appellees' request for appellate fees and costs.

### V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. We remand the

case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellants, Gary Lee Morris, and Pamela Jean Morris, and their surety, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE