IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief July 1, 2019

## FELICITAS HAYES v. CHRISTOPHER DANIEL SCOGGIN

**Appeal from the Chancery Court for Shelby County**
**No. CH-17-0849-2      Jim Kyle, Chancellor**

_____

### No. W2019-00057-COA-R3-CV

_____

Mother and father were divorced in 2013. They have four children together. Disputes regarding child custody have spanned four states and nearly six years. In this iteration, on June 9, 2017, mother filed a "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan." In his answer, father requested that, pursuant to Tenn. Code Ann. § 36-5-103(c),[1] he be reimbursed for the attorney's fees incurred as a result of defending against mother's petition. After nine months of litigation, mother voluntarily dismissed her petition without prejudice. As a result of mother's voluntary dismissal prior to trial, father's claim for attorney's fees was not resolved. Following mother's dismissal, another dispute arose regarding summer custody. On April 20, 2018, father filed a petition to resolve the summer custody issue; it was resolved by a consent order. Following the consent order, father filed a petition to recover the attorney's fees and costs incurred in defending against mother's voluntarily dismissed petition. Mother moved to dismiss father's petition alleging that *res judicata* precluded father from seeking to recover his attorney's fees in that matter, because he did not raise the issue in his summer custody petition. The trial court disagreed. Mother applied for an interlocutory appeal; this Court denied her application. The trial court subsequently awarded father $11,963.08 in attorney's fees and costs. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

---

[1] "A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing." Tenn. Code Ann. § 36-5-103(c) (2018).

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Brice M. Timmons, Memphis, Tennessee, for the appellant, Felicitas Hayes.

No appearance by or on behalf of appellee, Christopher Daniel Scoggin.

**OPINION**

**I.**

The parties were divorced, in San Diego, California. They have four minor children. On June 19, 2013, husband and wife entered into an agreed joint custody order regarding the children; they agreed to alternate physical custody on a weekly basis. A subsequent consent order permitted father to move to North Carolina with the children.

On September 8, 2015, a trial court in North Carolina entered an order holding that there had been a substantial and material change in circumstance affecting the welfare of the minor children that warranted a modification of the California custody order. The material change in circumstance included: father now lived in North Carolina and mother lived in Indiana, which rendered the previous agreement to alternate physical custody on a weekly basis impossible; mother remarried and decided to live in Indiana with her new husband and two additional young children; and father's impending retirement from the United States Marine Corps and plan to relocate with the minor children to Tennessee. In addition, the court stated the following notable events occurred that further supported modification: in 2013, father was deployed and when he came back mother refused to return the children, in contravention to the terms of the custody agreement; in 2013, father refused to return the children to the mother following the Christmas holiday; mother filed a motion to register the California judgment in Indiana, but that action was dismissed due to the Indiana court finding that the minor children were residents of North Carolina; and assorted other events indicating miscommunication and an overall lack of cooperation between the parties.

Following a hearing, the North Carolina trial court announced from the bench that it would award primary custody to mother. However, "after further deliberation and consideration," the court held in its order that it was in the best interests of the minor children that primary custody be awarded to father, "subject to liberal visitation privileges" to the mother. The court held in its order that it was in the best interest of the children to award primary custody to father, because:

> [father] has been a single parent for the past eighteen months
> and despite his status as an active Marine has been able to

> provide for all of the children's physical, emotional and spiritual needs. That the children have thrived in the plaintiff's care and appear to be healthy, happy and well adjusted (sic) children.

Father had secured a suitable home for himself and the children in Tennessee. The children were projected to attend school, and reside near father's parents and extended family that would support father in raising the children. The children had a history of spending extended periods of time with their Tennessee grandparents. In addition, father had a suitable means of earning a future income. The court found that mother has remarried and now has two additional small children in her home; her new husband also has two children who visit the home every other weekend. The court expressed concern regarding mother's four-bedroom home and its ability to accommodate the four additional children on top of the four already residing in the home. The court noted that the minor children at issue had not previously lived with the other four children. The court had additional concern regarding mother's claim that she planned to attend law school. It expressed concerned about mother's ability to handle work, law school, and eight children in her home. Mother was ultimately granted secondary custody and "liberal visitation rights."

Mother appealed the September 8, 2015 order; in October 2016, the judgment was affirmed by the North Carolina Court of Appeals.

On November 12, 2015, mother filed a motion for emergency custody and a collateral claim for a change of custody based upon changed circumstances. On June 9, 2016, mother filed a motion to expedite the temporary custody hearing. While these motions were still pending, on May 3, 2017, the North Carolina trial court deferred jurisdiction over the issue of modification and enforcement of custody to the children's home state of Tennessee. On June 9, 2017, mother filed a "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan" in Shelby County.

On July 12, 2017, the parties entered a consent order modifying a previous order on mother's request for a continuance. Therein, mother agreed to return all four children to father on July 23, 2017. Without admitting civil contempt, father's compliance

> [w]ith this paragraph shall purge [f]ather of the alleged civil contempt set forth in [m]other's "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan," and shall render that issue moot, and the

only remaining ultimate issue for trial shall be modification of the current custody order and entry of a Permanent Parenting Plan Order.

The criminal contempt portions of mother's petition were dismissed with prejudice.

On September 5, 2017, the court entered a consent order regarding a forensic custodial evaluation agreed to by the parties. The parents and children agreed to undergo a forensic custodial evaluation with Dr. John Leite.

On January 29, 2018, father filed an answer to mother's "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan." In his answer, he requested to "be reimbursed his attorney['s] fees incurred as a result of [m]other's filing" the petition, pursuant to Tenn. Code Ann. § 36-5-103(c). On April 6, 2018, mother filed a notice of voluntary non-suit regarding her June 9, 2017 petition; the court entered an order dismissing the matter without prejudice, and it ordered mother to pay costs.

On April 20, 2018, as a result of a new dispute, father filed a petition to modify the summer parenting schedule. In his petition, he noted that

In January of 2018, Dr. Leite recommended that the children remain with their Father in Memphis, and further suggested that 'as the children age into high school level adolescence, consideration be given to the children's wishes regarding the impact of length of summer visitation on social adjustment and school related summer activities.'

In light of Dr. Leite's recommendation, Father requested that Mother dismiss her Petition. Father made his first request that Mother dismiss her Petition in January of 2018 and second request in March of 2018. Mother refused both requests and a hearing was scheduled for July of 2018.

(Paragraph numbering omitted). Father stated that the two daughters now desired to spend their summers primarily with father. Both girls allegedly "expressed that they are uncomfortable in their mother's home due to her not having enough bathrooms." In April 2018, father emailed mother to inform her that one of the daughters wanted to participate in a local lacrosse program in order to increase her chance of playing at a collegiate level. He asked mother to consent to the daughter attending the local program, or for her to participate in mediation if they could not agree on a solution. Father alleges that mother did not respond, but instead "told [the daughter] that she was not allowed to remain in

Memphis for the summer…[and] told [the daughter] that her [f]ather was not really her biological father." Father states that this caused the daughter extreme emotional distress. For these reasons, father sought to modify the summer parenting schedule. Father also requested that mother be ordered to pay father's attorney's fees and court costs for the summer custody petition.

On April 27, 2018, mother filed a "Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike the Report of Dr. Leite." Mother alleged that the June 10, 2015 North Carolina order was never enrolled in Tennessee, and that the matter remained a foreign order. On May 8, 2018, father filed his response. On May 9, 2018, the court entered an order stating that the provisions of Tenn. Code Ann. § 36-6-229 had been met, because, on June 9, 2017, mother had filed her "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan." Father did not contest the validity of the foreign decree within twenty days of the petition, and therefore, pursuant to Tenn. Code Ann. § 36-6-229(c)(3), the failure to contest the registration resulted in confirmation of the child-custody determination and precluded further contest of that determination.

On May 25, 2018, the parties entered a consent order on father's petition to modify the summer parenting schedule. On May 31, 2018, father filed a petition for assessment of fees and costs, pursuant to Tenn. Code Ann. § 36-5-103(c), related to mother's voluntarily dismissed "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan." Mother filed a motion to dismiss father's petition as *res judicata* and requested her own attorney's fees and costs based on father's alleged failure to state a claim upon which relief could be granted.

On June 12, 2018, the court denied mother's "Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike the Report of Dr. Leite." The court held that its May 9, 2018 order enrolling the June 10, 2015 order cured any issues related to enrollment, which rendered mother's motion moot. Mother was also deemed to have actual notice of the proceedings, and her motion to dismiss for insufficient process and service was also denied. The court then continued the matter for a hearing on mother's motion to strike the report of Dr. Leite.

On July 13, 2018, father filed a response to mother's motion to dismiss his petition as *res judicata*. Father argued that he did not seek to alter or amend a final judgment. He argues that

> Counsel for Mother asserts in her *Motion to Dismiss* that as a result of Father filing his *Petition to Modify Summer*

*Parenting Time* on April 20, 2018 that he has foregone his opportunity to seek attorney['s] fees in the matter that was ultimately dismissed by Mother on April 6, 2018. Given the time sensitive nature of the issues set forth in Father's *Petition to Modify Summer Parenting Time*, he had to pursue those issues immediately and did so by filing said *Petition* on April 20, 2018. Fortunately, the parties were able to resolve said *Petition* by agreement. Father's decision to pursue the issues related to summer parenting time was driven by an urgency to have that matter resolved expeditiously and does not preclude [him] from coming back to request fees incurred as a result of Mother's earlier Petition[,] which resulted in ten (10) months worth of litigation.

\* \* \*

Mother appropriately cites to the Court of Appeal's holding in the matter of **Pounders v. Pounders**, a Shelby County Case which stands for the proposition, in part, that the purpose of Tennessee Code Annotated § 36-5-103(c) would not be served if the other spouse could simply dismiss his or her petition prior to the hearing in order to avoid payment of the custodial spouse's attorney's fees. **Pounders v. Pounders**, No. W2010-01510-COA-R3-CV, 2011 Tenn. App. LEXIS 477, at 5 (Tenn. Ct. App. Aug. 31, 2011).

The scenario described above is exactly what has transpired in this matter. Mother has a history of engaging in the filing of vexatious petitions which have resulted in Father having to pay tens of thousands of dollars to lawyers in several states defending the best interest of the parties' children.

On April 6, 2018, Mother filed her Notice of Voluntary Non-Suit and entered her Order of Voluntary Dismissal Without Prejudice, thereby reserving her right to adjudicate the matter at a later date on its merits. Mother's claim that a request for attorney fees is barred by Res Judicata is specious in light of the fact that Mother voluntarily non-suited **without prejudice**.

- 6 -

(Emphasis in original). Mother filed a response; she again argued that father could have raised this issue in his other petition, but did not. Mother argues that father's "last petition filed in this matter was filed by [f]ather and resolved by consent and by the entry of a final order." Mother believes that the consent order on the summer custody issue rendered all of the issues between the parties fully and finally resolved.

On July 27, 2018, the trial court entered an order denying mother's motion to dismiss father's petition. It held that the doctrine of *res judicata* did not bar father from seeking the relief set forth in his petition. Mother was granted permission for an interlocutory appeal. This Court denied mother's application.

On December 14, 2018, the court entered an order requiring mother to pay father $11,963.08 as reimbursement for attorney's fees and costs incurred defending against mother's June 9, 2017 petition. Mother appeals.

## II.

Mother asks this Court to consider:

> [w]hether the [t]rial [c]ourt erred when it failed to grant a 12.02(6) motion on the basis of *res judicata* and to award mother attorney's fees pursuant to Tenn. Code Ann. [§] 20-12-119.

## III.

A trial court's decision that a claim is barred by the doctrine of *res judicata* involves a question of law which will be reviewed *de novo* on appeal without a presumption of correctness. ***Jackson v. Smith***, 387 S.W.3d 486, 491–92 (Tenn. 2012); ***In re Estate of Boote***, 198 S.W.3d at 719.

## IV.

Mother argues that *res judicata* bars father's petition for attorney's fees incurred defending against her June 9, 2017 petition, because father did not raise the issue in his separately filed petition to modify the parties' summer custody schedule. She argues that father was aware of the fees and costs incurred in defending against mother's dismissed petition, and that he improperly waited six days after his petition to modify summer custody was resolved by consent before filing his petition for attorney's fees and costs incurred defending against mother's prior petition.

Regarding a *res judicata* defense, the Supreme Court has stated that

> The doctrine of res judicata, or claim preclusion, bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. It is a "rule of rest[.]"
>
> The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

*Long v. Bd. of Prof'l Responsibility of Supreme Court*, 435 S.W.3d 174, 183 (Tenn. 2014) (Internal citations omitted).

"The primary purposes of the doctrine are to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." *Napolitano v. Bd. of Prof'l Responsibility*, 535 S.W.3d 481, 496 (Tenn. 2017) (citing *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009)).

As stated by mother in her brief on appeal, "[t]his case arises from post-divorce custody litigation taking place across four (4) states and over approximately five (5) years. During that time[,] the parties have brought six (6) distinct custody actions against each other." Among these many "distinct custody actions," at issue presently, are two separate custody actions. Mother conflates the two in an attempt to argue that father should be precluded from obtaining attorney's fees incurred in defending against her voluntarily dismissed petition, which he is permitted to request pursuant to Tenn. Code Ann. § 36-5-103(c).

The first action involved mother's "Petition to Enroll Foreign Decree, For Immediate Injunctive Relief, for Sciare Facias, and Citation for Criminal and Civil Contempt, for Modification of Custody Order, and for Entry of Temporary Parenting Plan." This petition was filed on June 9, 2017. It involved a series of allegations that father alienated mother, a litany of allegations that father violated the September 21, 2015 order, and a specific complaint about child custody for summer 2017. Mother requested the appointment of a guardian ad litem, that father be incarcerated for civil and criminal contempt, an injunction, and modification of the 2015 order based upon father's alleged pre-petition violations of the order.

In father's answer, he requested that he "be reimbursed his attorney['s] fees incurred as a result of [m]other's filing" the petition. Mother later decided to voluntarily dismiss her petition. Notably, she dismissed her petition without prejudice, thereby

reserving her right to adjudicate the matter at a later date. Father's claim for attorney's fees was not litigated in the "former suit," because of mother's voluntary dismissal. There was no final judgment on that issue, and the matter remained dismissed without prejudice.

Despite mother's decision to voluntarily dismiss her petition without prejudice, father was still permitted to recover the attorney's fees he incurred in defending against her petition; **Pounders v. Pounders** stands for the proposition that mother cannot voluntarily dismiss her petition in order to avoid paying the statutorily permitted attorney's fees. **Pounders v. Pounders**, No. W2010-01510-COA-R3-CV, 2011 Tenn. App. LEXIS 477, at 5 (Tenn. Ct. App. Aug. 31, 2011) (holding that the purpose of Tenn. Code Ann. § 36-5-103 would not be served if the other spouse could simply dismiss his or her petition prior to the hearing in order to avoid payment of the custodial spouse's attorney's fees.) In accordance with Tenn. Code Ann. § 36-5-103(c), and within a reasonable time following mother's dismissal, father properly filed a petition seeking to recover his statutorily permitted attorney's fees.

The second action involved father's petition to modify the summer parenting schedule; it was filed on April 20, 2018. This petition was filed as a result of the two daughters' alleged desire to spend the summer of 2018 with father. More specifically, one of the daughters wanted to attend a local lacrosse camp in order to better her chance at obtaining a college scholarship. Father's petition alleges that he emailed mother in an attempt to resolve the matter and that he suggested mediation if they could not agree on a solution, but he was unsuccessful. Because the parties were unable to resolve the issue, and with summer 2018 fast approaching, father filed a petition seeking court intervention. The summer arrangement was ultimately resolved by consent of the parties on the day of the hearing. An appropriate consent order was filed.

The two events at issue did not arise out of the same transaction such that *res judicata* applies to bar father's petition. *See* **Creech v. Addington**, 281 S.W.3d 363, 380 (Tenn. 2009) (holding that two suits shall be deemed the same "cause of action" for purposes of *res judicata* where they arise out of the same transaction). Additionally, there is nothing in the consent order that could be interpreted as having resolved father's claim for attorney's fees in the separate matter or that could be deemed to otherwise preclude his ability to file a petition to recover those attorney's fees. The fact that the parties had an additional emergency dispute regarding summer custody in the interim that necessitated court intervention appears to be in accordance with the ongoing state of affairs between the parties. There is no indication that "[f]ather engaged in 'gotcha' litigation," as mother asks this Court to believe.

We affirm the trial court's holding that father's petition for attorney's fees is not barred by the doctrine of *res judicata*. We affirm the award of $11,963.08 in attorney's fees and costs to father. In accordance with this holding, we also decline to grant

mother's request for attorney's fees based on father's alleged failure to state a claim upon which relief may be granted.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Felicitas Hayes. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE