IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2020

## STATE OF TENNESSEE v. CHARLES MERIWEATHER

**Appeal from the Criminal Court for Davidson County
No. 2005-B-713; 2005-C-1868     Jennifer Smith, Judge**

_____

### No. M2019-01779-CCA-R3-CD

_____

On March 4, 2011, Charles Meriweather, Defendant, entered negotiated pleas of guilty to two Class B felony drug offenses and was sentenced to consecutive terms of twelve-years.  The effective twenty-four-year sentence was also ordered to be served consecutively to a federal sentence.  The judgments provided that the sentences would be served in a "community based alternative" and required Defendant to report to the community corrections officer within seventy-two hours of his release from federal custody.  Defendant was arrested in 2018 on drug and weapons charges.  Following a revocation hearing, the trial court revoked Defendant's probation and ordered Defendant to serve his sentences in the Department of Correction.  Defendant claims that the trial court abused its discretion in ordering his sentences to be served.  After a thorough review of the record and applicable case law, we affirm the judgments of the trial court.

### Tenn. R. App. Proc. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

Sarah R. King, Nashville, Tennessee (on appeal), and William Stover, Nashville, Tennessee (at trial), for the appellant, Charles E. Meriweather.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural History

### *September 11, 2006 Judgments*

Defendant pled guilty in 2006 in two separate cases: 2005-B-713 for sale of a Schedule II controlled substance greater than 0.5 grams and 2005-C-1868 for possession of a Schedule II controlled substance over 0.5 grams with intent to sell or deliver. Pursuant to a plea agreement, he was sentenced to consecutive twelve-year sentences as a Range II multiple offender to be served one year in confinement followed by five years' probation on each case. Defendant filed a petition for post-conviction relief. After the post-conviction court denied his petition, this court reversed and remanded to allow Defendant to withdraw his guilty pleas. *Charles Edward Meriweather v. State*, No. M2008-02329-CCA-R3-PC, 2010 WL 27947 at *1 (Tenn. Crim. App. Jan. 7, 2010).

### *March 4, 2011 Judgments*

Following remand, Defendant again pled guilty in cases 2005-B-713 and 2005-C-1868 to two Class B felony drug offenses in exchange for consecutive twelve-year sentences as a Range II multiple offender. The effective twenty-four-year sentence was ordered to be served consecutively to a sentence in federal case number 07-00069. The March 4, 2011 Judgments provided that the sentences would be served in a "community-based alternative" and required Defendant to report to the community corrections officer within seventy-two hours of his release from federal custody.

In 2018, Defendant was arrested and charged with felon in possession of a weapon, possession of a controlled substance with intent to sell or deliver, possession of drug paraphernalia, and possession of a controlled substance in a drug-free school zone. Based upon these new charges, the trial court issued a probation violation warrant.

### *Revocation Hearing*

The revocation hearing was held on June 26, 2019, and August 14, 2019. The hearing was bifurcated to allow a witness who was not available on June 26 to appear on August 14.

Detective Steven Heimbach was the only witness called by the State at the revocation hearing. Detective Heimbach, who was assigned to the undercover narcotics unit of the Nashville Metro Police Department, testified that, using a criminal informant, he made four "controlled buys" of a "felony amount" of cocaine from Defendant. He

stated that detectives were able to "positively identify" Defendant on two occasions as the person who sold the narcotics. Detective Heimbach said that the purchases were made at a house on Brickdale Lane and that the house was listed as Defendant's residence on his driver's license, his vehicle registration, his electricity service, and his criminal arrest history.

Following the "controlled buys," Detective Heimbach obtained a search warrant for the Brickdale Lane residence and executed the warrant. He stated that, when they entered the restroom, there were "three clear, plastic bags containing a white rock-like and powdered substance that [were] floating down the drain." Detective Heimbach seized twenty-three grams of crack cocaine and forty grams of powder cocaine from Defendant's bedroom. On Defendant's bedroom dresser, Detective Heimbach located some zipper sandwich bags and a scale with a substance that field-tested positive for cocaine. In the kitchen, Detective Heimbach found "several C-clamps and pieces of wood that [Defendant] used to fashion some sort of kilo press or cocaine press . . . that had white residue. And, also, all those pieces of wood field-tested positive for cocaine." In the safe in Defendant's bedroom closet, Detective Heimbach found a "loaded Glock [model 19, 9] millimeter handgun, along with about an ounce of marijuana in that safe."

On cross-examination, Detective Heimbach stated that he knew the handgun found in the safe belonged to Defendant because "[i]t was in his room, in a safe which [Defendant] had a key to on his key rings, which [Defendant] stated those are his keys." He said that he did not know if anyone else lived at or frequented Defendant's residence. Detective Heimbach testified that he did not submit the sample of cocaine to the Tennessee Bureau of Investigation ("TBI") crime lab but said that it "field-tested positive for cocaine." He denied that he submitted most of his prior drug cases to the TBI crime lab.

Shandrita Hyde testified that Defendant was her boyfriend and that she lived with him on Brickdale Lane at the time of the execution of the search warrant. She stated that there was a safe in the bedroom that she and Defendant shared. Ms. Hyde "[pled] the Fifth" and refused to answer any further questions about the safe.

The trial court found by a preponderance of the evidence that Defendant violated the terms of his probation. In its written order, the trial court credited the testimony of Detective Heimbach "concerning his observations of the controlled cocaine buys from [D]efendant and the fact that a firearm was seized from a safe located in [D]efendant's bedroom." The trial court found that Defendant constructively possessed the weapon located in the safe, citing *State v. Cooper*, 736 S.W.2d 125 (Tenn. Crim. App. 1987). The trial court revoked Defendant's probation and ordered his twenty-four-year sentence into effect. An amended judgment and "Continuation of Judgment" providing twelve-

year sentences to be served at thirty-five percent in the Tennessee Department of Correction were entered in both cases on September 4, 2019. Defendant timely appealed.

## Analysis

Defendant argues that the trial court revoked his probation based merely on an arrest or indictment. He contends that the State did not meet its burden to show by a preponderance of the evidence that Defendant violated his probation and that the trial court abused its discretion by basing its decision solely on the testimony of one officer. Further, Defendant argues that the trial court "should have taken an adverse inference that the defense witness, Ms. Hyde, was the possessor of the gun because she refused to answer any questions" based on her right against self-incrimination. Finally, Defendant argues that the trial court abused its discretion when it refused to place Defendant on a "community-based alternative for the remainder" of his sentence, "[to modify] his conditions of supervised release[,] . . . or [to impose] split confinement[.]"

The State argues that the trial court acted within its discretion when it revoked Defendant's probation and ordered him to serve his sentence in confinement.

### *Record on Appeal*

Initially, we note that the judgment forms entered on March 4, 2011, show that Defendant was sentenced to community corrections. At the time Defendant committed the offenses and at the time he pled guilty, Defendant was not eligible for probation because his sentence in each case was greater than ten years. *See* Tenn. Code Ann. § 40-35-303(a) (2011). The record on appeal does not contain *any* documents or other information indicating that, before the probation revocation warrant was issued in 2018, Defendant was terminated from community corrections and placed on probation pursuant to Tennessee Code Annotated section 40-36-106(e)(3)(A). In its "Order on Probation Violation" entered September 4, 2019, the trial court incorrectly referenced the September 11, 2006 Judgments sentencing Defendant to probation after a period of split confinement. Following remand from this court, Defendant apparently withdrew his guilty pleas underlying the September 11, 2006 Judgments and entered new guilty pleas resulting in the judgments entered on March 4, 2011. Even though the trial court's order referenced the incorrect judgments, on September 4, 2019, the trial court entered a judgment amending the judgments entered on March 4, 2011 and a "Continuation of Judgment" in both cases.

We further note that Defendant, the State, and the trial court all treated the hearing as a probation revocation hearing. On appeal, Defendant only raises issues related to revocation of probation, and the State in its brief only addresses the issues raised by

Defendant. Defendant, as the appellant, has the burden to provide an adequate record so that this court can conduct a meaningful review of the issues raised on appeal. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). Based on the limited record before us, we will only address the issues raised by Defendant concerning the revocation of probation.

*Standard of Review*

Upon a finding by a preponderance of the evidence that a defendant has violated a condition of his or her probation, a trial court may revoke probation and order the imposition of the original sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2019); *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Id.* Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if a trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. Tenn. Code Ann. § 40-35-311(e) (2019).

*Violation of Probation*

Once a trial court has determined that a violation of probation has occurred, the court has the discretionary authority to order the defendant to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). The determination of the proper consequences of the probation violation embodies a separate exercise of discretion. *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

Initially we note that Defendant provides no authority for his contention that the trial court was required to "take an adverse inference" regarding Ms. Hyde's refusal to answer questions about the safe located in Defendant's bedroom. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Crim. P. 10(b). This issue is waived.

Additionally, there was sufficient evidence to establish by a preponderance of the evidence that Defendant violated the terms of his probation. The testimony of Detective Heimbach supported the trial court's finding that Defendant sold cocaine to a criminal informant, and the testimony of an officer may support a probation revocation. *State v. Chris Allen Dodson*, No. M2005-01766-CCA-R3-CD, 2006 WL 1097497, at *3 (Tenn. Crim. App. Mar. 31, 2006) (stating that a trooper's testimony constituted "substantial evidence" and was sufficient to support the trial court's revocation of probation). Further, the trial court credited Detective Heimbach's testimony, and "[i]n probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Moreover, because the weapon was found in a safe within Defendant's bedroom and because Defendant had a key to that safe, the trial court properly determined that Defendant constructively possessed the weapon. *Cooper*, 736 S.W.2d at 129 ("[C]onstructive possession is the ability to reduce an object to actual possession."). Finally, because the trial court found that a violation had occurred, it acted well within its discretion to order confinement. *Brandon L. Brawner*, 2014 WL 465743, at *2. The trial court did not abuse its discretion, and Defendant is not entitled to relief.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE